**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| GRAND BEAR LODGE, LLC, | ) | Case No. 11-02321 |
| | ) | |
|     Debtor. | ) | Hon. Carol A. Doyle |

**NOTICE OF:
(i) ENTRY OF INTERIM AGREED ORDER AUTHORIZING
USE OF CASH COLLATERAL AND GRANTING ADEQUATE
PROTECTION AND (ii) FINAL HEARING ON USE OF CASH COLLATERAL**

**PLEASE TAKE NOTICE THAT** on January 25, 2011, the United States Bankruptcy Court for the Northern District of Illinois, Eastern Division entered an Interim Agreed Order Authorizing Use of Cash Collateral and Granting Adequate Protection (the "*Interim Order*") in the above captioned bankruptcy case, a copy of which Interim Order is attached hereto.

**PLEASE TAKE FURTHER NOTICE** that there will be a final hearing on the captioned Debtor's request to use Cash Collateral on February 24, 2011 at 10:30 a.m. in Room 742 of the Everett McKinley Dirksen Federal Building, 219 South Dearborn Street, Chicago, Illinois before the Honorable Carol A. Doyle, Chief United States Bankruptcy Judge for the Northern District of Illinois, Eastern Division, at which time the Debtor will ask the Court to enter a Final Order authorizing the Debtor to use Cash Collateral.

**PLEASE TAKE FURTHER NOTICE** that the Final Order may contain terms that are different from the Interim Order and entities that wish to review the Final Order before it is presented to the Court should appear in Court at the time and place set forth above or contact the undersigned counsel.

Dated:  February 3, 2011              GRAND BEAR LODGE, LLC
                                      By:  /s/ William J. Factor
                                           One of Its Attorneys

William J. Factor (6205675)
Sara E. Lorber (6229740)
THE LAW OFFICE OF
    WILLIAM J. FACTOR, LTD.
105 West Madison Street, Suite 1500
Chicago, IL 60602
Tel:    (847) 239-7248
Fax:    (847) 574-8233
Email: wfactor@wfactorlaw.com
          slorber@wfactorlaw.com

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| GRAND BEAR LODGE, LLC, | ) | Case No. 11-02321 |
| | ) | |
| Debtor. | ) | Hon. Carol A. Doyle |

**INTERIM AGREED ORDER AUTHORIZING USE OF CASH
COLLATERAL AND GRANTING ADEQUATE PROTECTION**

This matter having been presented to the Court pursuant to the emergency motion (the "Cash Collateral Motion") of Grand Bear Lodge, LLC, as debtor and debtor-in-possession, for the entry of an interim order authorizing the Debtor to use the Cash Collateral (as defined herein) of Dougherty Funding, LLC (the "Prepetition Lender") pursuant to, among other things, Sections 361, 362(a) and 363(c) of Title 11 of the United States Code (the "Bankruptcy Code") and Rules 4001 and 6003 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"); and based upon consideration of the Motion, the Declaration of Joseph Hook, the consent of the Prepetition Lender and the statements at the hearing on the Cash Collateral Motion, the Court finds that:

A.   <u>Petition Date</u>:   On January 21, 2011 (the "Petition Date"), Grand Bear Lodge, LLC (the "Debtor") filed its voluntary petition for relief under Chapter 11 of the Bankruptcy Code.

B.   <u>Debtor in Possession</u>.   The Debtor is continuing in the management and possession of its business and property as a Debtor-in-Possession pursuant to Bankruptcy Code §§ 1107 and 1008. No Official Committee of Unsecured Creditors (a "Committee") has been appointed in this Case.

C. <u>Jurisdiction and Venue</u>. This Court has jurisdiction over this proceeding and the parties and property affected hereby pursuant to 28 U.S.C. §§ 157 and 1334. Venue is proper in this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

D. <u>Notice</u>. Notice of the hearing on the Cash Collateral Motion has been given to the Prepetition Lender, through its counsel, the United States Trustee and the twenty (20) largest unsecured creditors of the Debtor, pursuant to Bankruptcy Rules 2002, 4001(c) and 9006, the Local Rules of this District, and as required by Bankruptcy Code §§ 361 and 363.

E. <u>Necessity of Relief Requested</u>. Without the use of Cash Collateral, the Debtor will not have the funds necessary to maintain its assets, provide financial information, pay employees, payroll taxes, inventory suppliers and other vendors, overhead, lease expenses, and other expenses necessary for the operation of the Debtor's business in the ordinary course and to maintain the value of the Debtor's assets. Good, adequate, and sufficient cause has been shown to justify the granting of the relief requested herein. The use of Cash Collateral will benefit the Debtor and its Estate. The ability of the Debtor to reorganize and/or preserve and maintain the value of its assets depends upon the Debtor's ability to use Cash Collateral. Accordingly, the use of Cash Collateral by the Debtor is actual and necessary to preserve its Estate and will avoid immediate and irreparable harm to the Debtor and its Estate.

**Based upon the foregoing,**

**IT IS HEREBY ORDERED THAT:**

1. <u>Motion Granted</u>. The Cash Collateral Motion is granted on an interim basis and the use of Cash Collateral is authorized, subject to the terms and conditions set forth in this Interim Cash Collateral Order.

2. <u>Authorization to Use Cash Collateral</u>. Subject to the terms and conditions of this Interim Cash Collateral Order, the Debtor may use Cash Collateral to pay actual, ordinary, and necessary expenses set forth in the budget attached hereto as Exhibit "A," or such budget may be modified or extended in writing with the prior written consent of the Prepetition Lender (the "Budget"; the expenses identified therein for the period prior to the Final Hearing Date shall be referred to as "Permitted Expenses") to the extent included in the weekly budget amount for the time period prior to the Final Hearing Date. Absent further order of Court or the consent of the Prepetition Lender (which will not be unreasonably withheld), Permitted Expenses shall not exceed the weekly amounts budgeted for such items in the amounts budgeted for such items in the Budget (which approval shall not be unreasonably withheld) by more than 15% per line item. The Debtor shall not expend any funds for any expenses not included in the Budget without further Order of the Court provided however that if the Prepetition Lender approves in writing any additional expenditures not included in the Budget, the Debtor may use Cash Collateral for such expenditure without further Order of the Court. The Budget, and the Debtor's corresponding authority to use the Prepetition Lender's cash collateral, may be modified and extended with the prior notice to and the prior consent and agreement of the Prepetition Lender. The Prepetition Lender's consent and the Debtor's authority to use Cash Collateral under this Interim Cash Collateral Order shall be effective retroactively to the Petition Date. Notwithstanding any other provision of this order to the contrary, the Debtor shall not be deemed to have been granted authority to use cash collateral to commence and/or prosecute a Debtor Challenge or to fund a Challenge by a third party (including but not limited to an unsecured creditors' committee) provided however that the Cash Collateral may be used to pay of the cost of a reasonable review of the Prepetition Loan Documents.

3. <u>Adequate Protection Liens</u>. In consideration for the Prepetition Lender's Consent to the Debtor's use of Cash Collateral, and to secure any diminution in the value of the Prepetition Lender's interest in the Prepetition Collateral as of the Petition Date, including the Cash Collateral, as a result of the Debtor's post-petition use of the Prepetition Collateral, including the Cash Collateral (such diminution in value being referred to collectively as an "Adequate Protection Claim") pursuant to §§ 361 and 363 of the Bankruptcy Code, the Prepetition Lender shall be, and hereby is granted a post-petition security interest in and lien upon the same type or form of collateral now owned or hereafter acquired by the Debtor that secured the Prepetition Claim as of the Petition Date and that is owned by the Debtor, including any proceeds thereof and including all proceeds deposited in any of Debtor's bank accounts except for the proceeds of any avoidance actions (the "Adequate Protection Collateral"), without the necessity of creating, filing, recording, or serving any financing statements or other documents that might otherwise be required under federal or state law in any jurisdiction or the taking of any other action to evidence, validate or perfect the Prepetition Lender's lien on such Adequate Protection Collateral. The lien granted to the Prepetition Lender pursuant to this paragraph shall be deemed effective as of the Petition Date and shall secure the Adequate Protection Claim. The lien and security interest of the Prepetition Lender granted pursuant to the terms of this Interim Cash Collateral Order shall be junior only to the prior perfected and unavoidable liens and security interests (if any) in property of the Debtor's Estate as of the Petition Date, other than the Prepetition Lender's liens in the Prepetition Collateral (the "Prior Liens"), provided that (i) the Prior Liens are paramount to the Prepetition Lender's liens and security interests pursuant to the Prepetition Claim Documents, and are valid, perfected, and non-avoidable in accordance with applicable law, and (ii) the foregoing is without prejudice to the

rights of the Debtor or any other party in interest, including the Prepetition Lender, to object to the validity, priority, or extent of such Prior Liens, or the allowance of such debts secured thereby, or to institute any actions or adversary proceedings with respect thereto.

4. <u>Adequate Protection Superpriority Claims</u>. In consideration for the Prepetition Lender's Consent to the Debtor's use of Cash Collateral, and to secure any diminution in the value of the Prepetition Lender's interest in the Prepetition Collateral as of the Petition Date, including the Cash Collateral, as a result of the Debtor's post-petition use of the Prepetition Collateral, including the Cash Collateral and pursuant to §§ 503(b) and 507(b) of the Bankruptcy Code, the Court grants to the Prepetition Lender an allowed superpriority administrative expense claim (the "Adequate Protection Superpriority Claim"). The Adequate Protection Superpriority Claim shall have priority over all other administrative expenses allowable under the Code pursuant to § 507(b) of the Bankruptcy Code, but shall be junior to all prior perfected and unavoidable secured claims in property of the Debtor's estate as of the Petition Date and to the quarterly fees payable to the United States Trustee pursuant to 28 U.S.C. § 1930; and the fees and expenses of the Clerk of this Court.

5. <u>The Debtor's Obligations</u>. The Debtor shall maintain insurance of the kind covering the Prepetition Collateral, including, without limitation, life, fire, hazard, comprehensive, public liability, and workmen's compensation as may be currently in effect, and obtain such additional insurance in an amount as is appropriate for the business in which the Debtor is engaged.

6. <u>Reservation of Rights</u>. The entry of this Order is without prejudice to the Debtor's right to seek authority to use additional Cash Collateral if the Debtor determines that

the cash collateral use authorized by this Order is insufficient and without prejudice to the Prepetition Lender's right to object to the Debtor's request to use additional Cash Collateral. The Prepetition Lender and the Debtor, as applicable, reserve all rights, and all legal and factual and arguments, including: (a) the right at any time, to assert that the value of the Prepetition Lender's interest in the Prepetition Collateral is not adequately protected or is adequately protected, (b) the right at any time to request that the Court lift the automatic stay due to the failure by the Debtor to comply with Section 362(d) of the Bankruptcy Code or to contest such request, (c) the right to object to any motion filed by the Debtor seeking to extend the exclusive period within which to file a plan of reorganization, (d) the right to assert that interest under the Prepetition Loan Documents is and has been payable at the applicable contractual default rate under the Prepetition Loan Documents and that such post-petition interest and others are allowable or to contest such assertions or the assertion that post-petition interest or other charges are allowable, (e) the right to seek the appointment of a trustee in this case, the dismissal of this case, or the conversion of this case to a case under Chapter 7 of the Bankruptcy Code, (f) the right to seek additional adequate protection including but not limited to cash payments; and (g) the rights to assert that the filing of the Debtor's voluntary petition in this case was not properly authorized pursuant to the Debtor's Limited Liability Company Agreement or under applicable law.

7. **Reporting**.  The Debtor shall deliver to the Prepetition Lender:

(a) On Friday of each week, a list of all amounts paid by the Debtor during the one week period ending on the immediately preceding Saturday which list shall identify the recipient of the payment, the amount of the payment and the Budget expense category in which such expense is applies; and

(b) On Friday of each week, an occupancy report for one week period ending on the immediately preceding Saturday.

8. <u>Term</u>. The Debtor's authority to use Cash Collateral under this Order shall be effective immediately and shall extend to the termination of the hearing for final approval of the use of Cash Collateral on the Final Hearing Date unless terminated earlier as provided in paragraph 9. To the extent any provisions of this Order conflicts with any provision of the Motion, the provisions of this Order shall control.

9. <u>Termination</u>. Immediately upon the occurrence or existence of one of the following Termination Events (as defined below) Prepetition Lender shall be authorized to issue a notice (a "Remedies Notice") (which Remedies Notice may be delivered by electronic mail) thereof to the Debtor, its counsel, counsel to any Unsecured Creditor Committee and the U.S. Trustee. With respect to Subsections (b), (c), and (d) of the definition of "Termination Event," the Debtor's authority to use cash Collateral will termination immediately upon issuance of a Remedies Notice without further order of the Bankruptcy Court. With respect to subsection (a) of the definition of Termination Event, unless, within five (5) days after receipt of such notice by the Debtor's counsel, the Court determines that the applicable Termination Event has not occurred or does not exist, the Debtor's authority to use Cash Collateral shall terminate immediately following such five day period without further order of the Bankruptcy Court. With respect to subsection (e) of the definition of Termination Event, unless, within fifteen (15) days after receipt of such notice by Debtor's counsel, the Court determines that the applicable Termination Event has not occurred or does not exist, the Debtor's authority to use Cash Collateral shall terminate immediately following such fifteen day period without further order of the Bankruptcy Court. The term "Termination Event(s)" shall mean any one or more of the following:

(a) the Debtor shall have failed to comply with any provision of this Interim Order

and shall have failed to cure such default on or before the fifth day following delivery of notice of such default to the Debtor which notice may be provided by electronic mail;

(b) the entry of an order dismissing this case or converting this case to a case under Chapter 7 of Title 11 of the United States Code, unless such order is stayed pending appeal;

(c) the entry of an order authorizing the appointment of a trustee or examiner without;

(d) the date that the order approving this Stipulation is reversed, revoked, stayed, rescinded, modified or amended without the consent of Prepetition Lender; and

(e) the date that the Debtor files a plan of reorganization with the Bankruptcy Court, other than with the consent of Prepetition Lender.

10. <u>Adequate Protection Demand</u>. Prepetition Lender shall be deemed to have made a demand for adequate protection with respect to any and all of the Prepetition Collateral effective as of the January 21, 2011. Prepetition Lender shall be entitled to adequate protection commencing as of January 21, 2011 to the extent that Prepetition Lender establishes that it is otherwise entitled to adequate protection.

11. <u>Challenge by Debtor</u>. Unless the Debtor commences an action ("Debtor Challenge") challenging any Debtor Stipulations (as defined below) on or before the thirtieth day following the date that the Prepetition Lender has provided a copy of the Prepetition Claim Documents (as defined below) to the Debtor's counsel, or such later time as to which the Debtor and the Prepetition Lender may agree to, in writing, the Debtor shall be deemed to have stipulated (collectively, the statements contained in paragraph 11(a) through 11(f) shall be referred to herein as the "Debtor Stipulations") that:

(a) The Prepetition Lender made a loan (the "Loan") to Debtor in accordance with the terms of a Promissory Note (the "Note") in the face amount of Nine Million Dollars ($9,000,000.00) dated November 23, 2005 and in accordance with the provisions of a Term Loan Agreement dated November 23, 2005, by and between

– 8 –

|     | Prepetition Lender and Debtor, as modified by that certain First Amendment to Term Loan Agreement dated June, 26 (collectively, the "Loan Agreement"); |
|-----|---|
| (b) | The Loan is secured by a Mortgage, Security Agreement and Fixture Financing Statement dated the 23rd day of November, 2005 and recorded with the Officer of the Recorder of Deeds, LaSalle County, Illinois (the "Recorder's Office") on the 6th day of December, 2005 as Document No. R2005-32038 (the "Mortgage") against Grizzly Jack's Grand Bear Lodge and Waterpark located at 2643 North IL Route 178, North Utica, IL 61373, as amended by a Loan and Mortgage Modification Agreement dated November 30, 2008 and recorded with the Recorder's Office on February 9, 2009 as Document No. 2009-03173 (the "First Loan Modification"), and as amended by a Loan and Mortgage Second Modification Agreement dated November 30, 2009 and recorded with the Recorder's Office on December 31, 2009 as Document No. 2009-32010 (the "Second Loan Modification"), and is further secured by an Assignment of Rents, Leases, Revenues and Profits of the Project dated the 23rd day of November, 2005 and recorded with the Recorder's Office on the 6th day of December, 2005 as Document No. R2005-32039 (the "Assignment of Revenues"), and is additionally secured by a Collateral Assignment of Account dated June 20, 2006 between Debtor and Prepetition Lender (the "Assignment of Account") and is also secured by a Uniform Commercial Code Financing Statement filed with the office of the Secretary of State, State of Illinois as File Number 010487536, and continued under a Continuation Statement filed October 19, 2010 (collectively the "Financing Statement") (the Note, Loan Agreement, Mortgage, First Loan Modification, Second Loan Modification, Assignment of Revenues, Assignment of Account and Financing Statement are sometimes referred to collectively herein as the "Prepetition Claim Documents"). |
| (c) | The Loan is further secured by the execution and delivery of a Guaranty (the "Guaranty") by Grand Bear Investors, LLC, an Illinois limited liability company, Joseph F. Hook, Jr., Keith E. Wolick and Susan Wolick dated as of the 23rd day of November, 2005 (collectively and individually, the "Guarantors"). |
| (d) | The Prepetition Lender holds an allowable claim against the Debtor in an aggregate amount equal to at least $8,659,069.41, as of the Petition Date, which amount includes default interest and other charges (the "Prepetition Claim"). |
| (e) | The Prepetition Claim, including all amounts due under the Prepetition Claim Documents, is secured by valid, perfected, and unavoidable first priority liens, security interests, and mortgages, in substantially all of the real and personal property of the Debtor (the Debtor's assets that are encumbered by such non-avoidable and perfected liens in favor of Prepetition Lender are hereinafter referred to as the "Prepetition Collateral"). |
| (f) | All (a) cash of the Debtor's Bankruptcy estate (the "Estate"), wherever located, and (b) cash equivalents, whether in the form of negotiable instruments, documents of title, securities, deposit accounts, or in any other form, which |

– 9 –

represent income, proceeds, products, rents, or profits of the Prepetition Collateral that are now in the possession, custody, or control of the Debtor, or in which the Debtor will obtain an interest during the pendency of this Case, which represent income, proceeds, products, rents, or profits of the Prepetition Collateral (collectively, the "Cash Collateral"), shall constitute the Cash Collateral of the Prepetition Lender.

12. <u>Challenges</u>. *Upon entry of a final order,* ~~Notwithstanding~~ anything contained herein to the contrary, the extent, validity, priority, perfection and enforceability of the prepetition obligations owed to the Prepetition Lender ("Prepetition Indebtedness"), and any liens, mortgages or security interests in favor of the Prepetition Lender encumbering the Prepetition Collateral ("Prepetition Liens"), and all acknowledgments, admissions, confirmations, and waivers of the Debtor above, are for all purposes subject to the rights of any party in interest, other than a Debtor and the Guarantors, to seek to invalidate, or otherwise challenge (including a determination of the validity, priority, and extent of any lien of) (collectively, "Claims and Defenses") the Prepetition Indebtedness or Prepetition Liens, including by properly filing a complaint pursuant to Bankruptcy Rule 7001 or by otherwise properly asserting a contested matter (any of these actions, a "Challenge"); provided, however, that, to the extent not previously resolved by confirmation and consummation of any chapter 11 plan of reorganization, any such Challenge must be commenced or asserted in this Court within ~~sixty (60)~~ *90* days after appointment of the committee of unsecured claimholders under section 1102 of the Bankruptcy Code, but in no event later than one hundred and ~~twenty (120)~~ *fifty (150)* days after entry of this Interim Order. Except to the extent that a Challenge is timely commenced within such time period (or such timely asserted Challenge does not result in a final and non-appealable order of this Court that is inconsistent with clauses (i) through (iv) of this Paragraph), then any and all Claims and Defenses against the Prepetition Lender ~~shall~~ *may not* be deemed to have been forever relinquished, released and waived as to such Committee and other person or entity, and if such Challenge is timely asserted on or before such date, any and all

Claims and Defenses that are not expressly asserted in such Challenge shall [*stet*] be deemed, immediately and without further action, to have been forever relinquished, released and waived as to such Committee and other person or entity.

[*Upon the entry of a final order,*] Except to the extent that a Challenge is timely commenced within such time period, or such timely asserted Challenge does not result in a final and non-appealable order of this Court that is inconsistent with clauses (i) through (iv) of this paragraph, then, without the requirement or need to file any proof of claim with respect thereto, (i) the Prepetition Indebtedness shall constitute an allowed, secured claim for all purposes in the Borrower's Chapter 11 Case and any subsequent proceedings under the Bankruptcy Code, including, without limitation, any chapter 7 proceedings if the Borrower's Chapter 11 Case is converted to a case under chapter 7 of the Bankruptcy Code (a "Successor Case"), (ii) the Prepetition Liens (as applicable) shall be deemed legal, valid, binding, enforceable, perfected, not subject to subordination or avoidance for all purposes in the Borrower's Chapter 11 Case and any Successor Case, (iii) the waiver of the Claims and Defenses against the Prepetition Lender shall be binding on all parties in interest in the Borrower's Chapter 11 Case and any Successor Case, and (iv) the Prepetition Indebtedness, the Prepetition Liens (as applicable), the waiver of the Claims and Defenses against the Prepetition Lender, and prior payments on account of or with respect to the Prepetition Indebtedness shall not be subject to any other or further claims, cause of action, objection, contest, setoff, defense or challenge by any party in interest for any reason, including, without limitation, by any successor to or estate representative of any Debtor. Nothing in this Interim Order shall confer standing upon the Committee or any other person or entity to bring, assert, commence, continue, prosecute or litigate any Claims and Defenses against the Prepetition Lender.

13. <u>Survival Following Termination</u>. Notwithstanding the provisions of this Interim Order, the rights, claims, security interest, liens and priorities of the Prepetition Lender with respect to all transactions which occurred prior to the termination of the Debtor's right to use Cash Collateral pursuant to the terms of this Interim Order shall remain unimpaired and unaffected by any such termination and shall survive any such termination.

14. <u>Rights and Remedies Cumulative</u>. The rights and obligations of the Debtor and the rights and claims of the Prepetition Lender arising under this Interim Order are in addition to, and not in lieu or substitution of, the rights, obligations, claims, security interests, liens and priorities existing as of the Petition Date.

15. <u>No Determination With Respect to Certain Issues</u>. *Based upon the parties' consent,* Nothing contained in this Interim Order (including the Budget) or in the Prepetition Lender's consent to the use of the Cash Collateral pursuant to this Interim Order shall constitute a determination or finding by the Court, or an agreement or an acknowledgment by the Prepetition Lender, (a) that the value of the Prepetition Lender's interests in the Prepetition collateral are "adequately protected" within the meaning of Sections 361 and 363 of the Bankruptcy Code or (b) that any calculation or assertion by the Debtor of the value of the Prepetition Collateral is accurate.

16. <u>Notices Under this Order</u>. Any notice permitted to be delivered by electronic mail pursuant to the terms of this order shall be deemed received by the intended recipient thereof if sent via e-mail to the following addresses:

<u>If to the Debtor:</u>

swolick@grandbearlodge.com;
construction@grandbearlodge.com.

With a copy to:

wfactor@wfactorlaw.com

If to Prepetition Lender:

PMarzynski@doughertymarkets.com

GBolin@doughertymarkets.com

With a copy to:

smeyer@oppenheimer.com;

rsluss@oppenheimer.com , Gretchen.Silver@USDoJ.Gov

rheinrich@h-and-k.com.

17. <u>Notice</u>. Notice of the Interim hearing on the Cash Collateral Motion has been given to the United States Trustee, the twenty (20) largest creditors of the Debtor and others in interest pursuant to Bankruptcy Rules 2002, 4001(c) and 9006, the Local Rules of this district, and as required by Bankruptcy Code §§102, 361 and 363. Other than the notice provided for herein, no further notice of, or hearing on, the relief sought in the Cash Collateral Motion is necessary or required.

18. The Cash Collateral Motion is hereby set for final hearing on February 24, 2011 at 10:30 a.m. (or such later date to which the final hearing is adjourned or continued, the "Final Hearing Date").

Chicago, Illinois
January 25, 2011

_____
Hon. Carol A. Doyle,
United States Bankruptcy Judge

GRAND BEAR LODGE, LLC

By: _____
One of Its Attorneys

DOUGHERTY FUNDING, LLC

By: _____
One of Its Attorneys

– 14 –

# EXHIBIT A

## Grand Bear Lodge, LLC
## Cash Flow Budget

| | 28-Jan-11 | 4-Feb-11 | 11-Feb-11 | 18-Feb-11 | 25-Feb-11 | 4-Mar-11 | 11-Mar-11 | 18-Mar-11 | 25-Mar-11 | 1-Apr-11 | Total |
|---|---|---|---|---|---|---|---|---|---|---|---|
| **Cash Receipts** | | | | | | | | | | | |
| Room Revenue | 93,440 | 99,950 | 111,490 | 111,170 | 153,950 | 105,940 | 132,810 | 133,040 | 240,360 | 363,860 | 1,546,010 |
| Banquet Revenue | 10,380 | - | 5,070 | 3,690 | 2,010 | - | 3,100 | 1,350 | 600 | - | 26,200 |
| Food and Beverage | 10,080 | 10,160 | 12,090 | 11,910 | 15,370 | 10,520 | 15,130 | 14,740 | 23,980 | 33,580 | 157,580 |
| Other | 15,030 | 15,840 | 22,040 | 16,670 | 20,780 | 16,380 | 26,760 | 18,950 | 28,020 | 47,390 | 227,860 |
| **Total Cash Receipts** | 128,930 | 125,950 | 150,690 | 143,440 | 192,110 | 132,840 | 177,800 | 168,080 | 292,960 | 444,830 | 1,957,630 |
| **Cash Disbursements** | | | | | | | | | | | |
| **Cost of Sales** | | | | | | | | | | | |
| Insurance | 3,110 | 3,110 | 4,630 | - | - | - | - | - | 28,150 | - | 56,300 |
| Maint. & Supplies | 4,740 | 2,210 | 3,990 | 4,630 | 4,630 | 4,630 | 9,260 | 9,260 | 9,260 | 9,260 | 61,780 |
| Food & Beverage Costs | 1,170 | 1,250 | 1,450 | 3,640 | 3,920 | 2,290 | 4,000 | 3,560 | 5,350 | 7,300 | 41,000 |
| Gift Shop Costs | | | | 1,440 | 1,880 | 1,290 | 1,840 | 1,800 | 2,950 | 4,130 | 19,200 |
| Capital Expenditures | | | | | | | 30,000 | | | | 30,000 |
| Utilities | | | 57,600 | | | 40,600 | | | | 40,600 | 138,800 |
| Association Dues | 14,140 | 14,140 | 14,140 | 14,140 | 14,140 | 14,140 | 14,140 | 14,140 | 14,140 | 14,140 | 141,400 |
| Villa & Cabin Owners Reimbursement | 27,860 | 30,880 | 35,190 | 33,910 | 52,880 | 33,380 | 43,460 | 40,950 | 81,370 | 146,600 | 526,480 |
| Fees to Enchanted Forest | 5,600 | 6,125 | 6,755 | 6,300 | 8,855 | 6,510 | 8,645 | 7,280 | 12,320 | 22,645 | 91,035 |
| Sales, Use & Occupancy Taxes | - | - | - | - | 1,410 | 10,110 | - | - | 4,960 | 45,800 | 62,280 |
| Other | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 2,000 | 2,000 | 2,000 | 2,000 | 2,000 | 15,000 |
| **Total Cost of Sales** | 57,620 | 58,715 | 124,755 | 93,210 | 88,715 | 114,950 | 113,345 | 107,140 | 132,350 | 292,475 | 1,183,275 |
| **Payroll & Benefits** | | | | | | | | | | | |
| Employee Wages & Taxes | - | 75,000 | - | 75,000 | - | 75,000 | - | 85,000 | - | 95,000 | 405,000 |
| Employee Benefits | 8,500 | - | - | - | 8,500 | - | - | - | 8,500 | - | 25,500 |
| **Total Payroll & Benefits** | 8,500 | 75,000 | - | 75,000 | 8,500 | 75,000 | - | 85,000 | 8,500 | 95,000 | 430,500 |
| **Other Disbursements** | | | | | | | | | | | |
| Professional Fees | - | - | - | - | 30,000 | - | - | - | 30,000 | - | 60,000 |
| Real Estate Taxes - Escrow | 2,000 | 2,000 | 3,000 | 3,000 | 3,000 | 3,000 | 20,000 | 20,000 | 20,000 | - | 80,000 |
| Sales & Marketing Expenses | 1,430 | 7,230 | 1,410 | 1,410 | 1,410 | 7,210 | 4,000 | 4,000 | 4,000 | 20,000 | 32,000 |
| Other | 3,430 | | | | | | 1,410 | 1,410 | 1,410 | 4,000 | 31,540 |
|  |  |  |  |  |  |  |  |  |  | 7,210 |  |
| **Total Other** | 3,430 | 9,230 | 4,410 | 4,410 | 34,410 | 10,210 | 25,410 | 25,410 | 55,410 | 31,210 | 203,540 |
| **Total Cash Disbursements** | 69,550 | 142,945 | 129,165 | 172,620 | 131,625 | 200,160 | 138,755 | 217,550 | 196,260 | 418,685 | 1,817,315 |
| **Net Cash Flow** | 59,380 | (16,995) | 21,525 | (29,180) | 60,485 | (67,320) | 39,045 | (49,470) | 96,700 | 26,145 | 140,315 |
| Beginning Cash | 9,000 | 68,380 | 51,385 | 72,910 | 43,730 | 104,215 | 36,895 | 75,940 | 26,470 | 123,170 | 9,000 |
| **Ending Cash** | 68,380 | 51,385 | 72,910 | 43,730 | 104,215 | 36,895 | 75,940 | 26,470 | 123,170 | 149,315 | 149,315 |

1/20/2011