IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| GRAND BEAR LODGE, LLC, | ) | Case No. 11-02321 |
| | ) | |
| Debtor. | ) | Hon. Carol A. Doyle |

**AGREED FINAL ORDER AUTHORIZING USE OF CASH
COLLATERAL AND GRANTING ADEQUATE PROTECTION**

This matter having been presented to the Court pursuant to the emergency motion (the "Cash Collateral Motion") of Grand Bear Lodge, LLC, as debtor and debtor-in-possession, for the entry of an interim order authorizing the Debtor to use the Cash Collateral (as defined herein) of Dougherty Funding, LLC (the "Prepetition Lender") pursuant to, among other things, Sections 361, 362(a) and 363(c) of Title 11 of the United States Code (the "Bankruptcy Code") and Rules 4001 and 6003 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"); and based upon consideration of the Motion, the Declaration of Joseph Hook, the consent of the Prepetition Lender and the statements at the hearing on the Cash Collateral Motion, the Court finds that:

A.  <u>Petition Date</u>: On January 21, 2011 (the "Petition Date"), Grand Bear Lodge, LLC (the "Debtor") filed its voluntary petition for relief under Chapter 11 of the Bankruptcy Code.

B.  <u>Debtor in Possession</u>. The Debtor is continuing in the management and possession of its business and property as a Debtor-in-Possession pursuant to Bankruptcy Code §§ 1107 and 1008. No Official Committee of Unsecured Creditors (a "Committee") has been appointed in this Case.

C.  <u>Jurisdiction and Venue</u>. This Court has jurisdiction over this proceeding and the

parties and property affected hereby pursuant to 28 U.S.C. §§ 157 and 1334. Venue is proper in this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

D. <u>Notice</u>. Notice of the hearing on the Cash Collateral Motion has been given to the Prepetition Lender, through its counsel, the United States Trustee and the twenty (20) largest unsecured creditors of the Debtor (the "Notice Parties"), pursuant to Bankruptcy Rules 2002, 4001(c) and 9006, the Local Rules of this District, and as required by Bankruptcy Code §§ 361 and 363. On February 4, 2011, the Notice Parties were provided with notice that a hearing on the Cash Collateral Motion would be held on February 24, 2011. Pursuant to the Second Interim Agreed Order Authorizing Use of Cash Collateral and Granting Adequate Protection ("Second Interim Order"), the hearing on the Cash Collateral Motion was continued to March 10, 2011 at 10:30 a.m. Notice of the March 10, 2011 hearing was provided to the Notice Parties.

E. <u>Necessity of Relief Requested</u>. Without the use of Cash Collateral, the Debtor will not have the funds necessary to maintain its assets, provide financial information, pay employees, payroll taxes, inventory suppliers and other vendors, overhead, lease expenses, and other expenses necessary for the operation of the Debtor's business in the ordinary course and to maintain the value of the Debtor's assets. Good, adequate, and sufficient cause has been shown to justify the granting of the relief requested herein. The use of Cash Collateral will benefit the Debtor and its Estate. The ability of the Debtor to reorganize and/or preserve and maintain the value of its assets depends upon the Debtor's ability to use Cash Collateral. Accordingly, the use of Cash Collateral by the Debtor is actual and necessary to preserve its Estate and will avoid immediate and irreparable harm to the Debtor and its Estate.

**Based upon the foregoing,**

**IT IS HEREBY ORDERED THAT:**

1. <u>Motion Granted</u>. The Cash Collateral Motion is granted on a final basis and the use of Cash Collateral is authorized, subject to the terms and conditions set forth in this Cash Collateral Order.

2. <u>Authorization to Use Cash Collateral</u>. Subject to the terms and conditions of this Cash Collateral Order, the Debtor may use Cash Collateral to pay actual, ordinary, and necessary expenses set forth in the budget attached hereto as Exhibit "A," or as such budget may be modified or extended in writing with the prior written consent of the Prepetition Lender and as modified by the last sentence of this Section 2 (the "Budget"; the expenses identified therein for the period prior to the Termination Date (as defined below) shall be referred to as "Permitted Expenses") to the extent included in the weekly budget amount for the time period prior to the Termination Date. Absent further order of the Court or the consent of the Prepetition Lender (which will not be unreasonably withheld), Permitted Expenses shall not exceed the weekly amounts budgeted for such items in the amounts budgeted for such items in the Budget by more than 15% per line item determined on a rolling two week basis. The Debtor shall not expend any funds for any expenses not included in the Budget without further Order of the Court, <u>provided however</u> that if the Prepetition Lender approves in writing any additional expenditures not included in the Budget, the Debtor may use Cash Collateral for such expenditure without further Order of the Court. The Budget, and the Debtor's corresponding authority to use the Prepetition Lender's cash collateral, may be modified and extended with the prior notice to and the prior consent and agreement of the Prepetition Lender. The Prepetition Lender's consent and the Debtor's authority to use Cash Collateral under this Cash Collateral Order shall be effective retroactively to the Petition Date. Notwithstanding any other provision of this order to the

contrary, the Debtor shall not be deemed to have been granted authority to use cash collateral to commence and/or prosecute a Debtor Challenge or to fund a Challenge by a third party (including but not limited to an unsecured creditors' committee) provided however that the Cash Collateral may be used to pay of the cost of a reasonable review of the Prepetition Loan Documents. The Budget attached as Exhibit A is hereby modified to add an additional payment of $20,000 in the line item entitled "Real Estate Taxes – Escrow" for the week ending April 29, 2011 which payment shall be made to the Tax Account (as defined below) prior to April 28, 2011.

3.  Adequate Protection Liens. In consideration for the Prepetition Lender's Consent to the Debtor's use of Cash Collateral, and to secure any diminution in the value of the Prepetition Lender's interest in the Prepetition Collateral as of the Petition Date, including the Cash Collateral, as a result of the Debtor's post-petition use of the Prepetition Collateral, including the Cash Collateral (such diminution in value being referred to collectively as an "Adequate Protection Claim") pursuant to §§ 361 and 363 of the Bankruptcy Code, the Prepetition Lender shall be, and hereby is granted a post-petition security interest in and lien upon the same type or form of collateral now owned or hereafter acquired by the Debtor that secured the Prepetition Claim as of the Petition Date and that is owned by the Debtor, including any proceeds thereof and including all proceeds deposited in any of Debtor's bank accounts except for the proceeds of any avoidance actions (the "Adequate Protection Collateral"), without the necessity of creating, filing, recording, or serving any financing statements or other documents that might otherwise be required under federal or state law in any jurisdiction or the taking of any other action to evidence, validate or perfect the Prepetition Lender's lien on such Adequate Protection Collateral. The lien granted to the Prepetition Lender pursuant to this

paragraph shall be deemed effective as of the Petition Date and shall secure the Adequate Protection Claim. The lien and security interest of the Prepetition Lender granted pursuant to the terms of this Cash Collateral Order shall be junior only to the prior perfected and unavoidable liens and security interests (if any) in property of the Debtor's Estate as of the Petition Date, other than the Prepetition Lender's liens in the Prepetition Collateral (the "Prior Liens"), provided that (i) the Prior Liens are paramount to the Prepetition Lender's liens and security interests pursuant to the Prepetition Claim Documents, and are valid, perfected, and non-avoidable in accordance with applicable law, and (ii) the foregoing is without prejudice to the rights of the Debtor or any other party in interest, including the Prepetition Lender, to object to the validity, priority, or extent of such Prior Liens, or the allowance of such debts secured thereby, or to institute any actions or adversary proceedings with respect thereto.

    4.    <u>Adequate Protection Superpriority Claims</u>. In consideration for the Prepetition Lender's Consent to the Debtor's use of Cash Collateral, and to secure any diminution in the value of the Prepetition Lender's interest in the Prepetition Collateral as of the Petition Date, including the Cash Collateral, as a result of the Debtor's post-petition use of the Prepetition Collateral, including the Cash Collateral and pursuant to §§ 503(b) and 507(b) of the Bankruptcy Code, the Court grants to the Prepetition Lender an allowed superpriority administrative expense claim (the "Adequate Protection Superpriority Claim"). The Adequate Protection Superpriority Claim shall have priority over all other administrative expenses allowable under the Code pursuant to § 507(b) of the Bankruptcy Code, but shall be junior to all prior perfected and unavoidable secured claims in property of the Debtor's estate as of the Petition Date and to the quarterly fees payable to the United States Trustee pursuant to 28 U.S.C. § 1930 and the fees and expenses of the Clerk of this Court.

5. <u>Adequate Protection Payments</u>. The Prepetition Lender shall receive payments as set forth on the attached budget for the line item identified as "Interest". The Prepetition Lender reserves the right to assert that additional interest or fees are due and payable and to assert that any amounts paid to Lender constitute the Lender's post-petition collateral as provided in 11 U.S.C. Section 552(b)(1) and/or (2), and the Debtor reserves the right to assert that the Lender is not entitled to post-petition interest or amounts allowable under 11 U.S.C. Section 506.

6. <u>Taxes</u>. As further adequate protection, amounts on the budget appearing on the line entitled "Real Estate Taxes – Escrow" shall be transferred to a separate deposit account ("Tax Account"), and unless otherwise ordered by the Court or with the consent of the Prepetition Lender, shall not be used for any purpose other than: a) paying current real estate taxes; or b) paying interest and/or penalties that are charged after the Petition Date on account of past due real estate taxes. As further adequate protection, the Prepetition Lender is hereby granted first priority lien and security interest in the Tax Account which shall be deemed perfected without the necessity of creating, filing, recording, or serving any financing statements or other documents that might otherwise be required under federal or state law in any jurisdiction or the taking of any other action to evidence, validate or perfect the Prepetition Lender's lien Tax Account.

7. <u>The Debtor's Obligations</u>. The Debtor shall maintain insurance of the kind covering the Prepetition Collateral, including, without limitation, life, fire, hazard, comprehensive, public liability, and workmen's compensation as may be currently in effect, and obtain such additional insurance in an amount as is appropriate for the business in which the Debtor is engaged.

8. <u>Reservation of Rights</u>. The entry of this Order is without prejudice to the Debtor's right to seek authority to use additional Cash Collateral if the Debtor determines that the cash collateral use authorized by this Order is insufficient and without prejudice to the Prepetition Lender's right to object to the Debtor's request to use additional Cash Collateral. The Prepetition Lender and the Debtor, as applicable, reserve all rights, and all legal and factual and arguments, including: (a) the right at any time, to assert that the value of the Prepetition Lender's interest in the Prepetition Collateral is not adequately protected or is adequately protected, (b) the right at any time to request that the Court lift the automatic stay due to the failure by the Debtor to comply with Section 362(d) of the Bankruptcy Code or to contest such request, (c) the right to object to any motion filed by the Debtor seeking to extend the exclusive period within which to file a plan of reorganization, (d) the right to assert that interest under the Prepetition Loan Documents is and has been payable at the applicable contractual default rate under the Prepetition Loan Documents and that such post-petition interest and other charges are allowable or to contest such assertions or the assertion that post-petition interest or other charges are allowable, (e) the right to seek the appointment of a trustee in this case, the dismissal of this case, or the conversion of this case to a case under Chapter 7 of the Bankruptcy Code, (f) the right to seek additional adequate protection including but not limited to additional cash payments; (g) the rights to assert that the filing of the Debtor's voluntary petition in this case was not properly authorized pursuant to the Debtor's Limited Liability Company Agreement or under applicable law; and (h) the right to assert that the Debtor's post-petition revenue secures the obligations owed to the Prepetition Lender and is additional collateral to the Collateral in existence as of the Petition Date in accordance with 11 U.S.C. Section 552(b)(1) and/or (2).

9. <u>Reporting</u>. The Debtor shall deliver to the Prepetition Lender:

(a) On Friday of each week, a list of all amounts paid by the Debtor during the one week period ending on the immediately preceding Saturday which list shall identify the recipient of the payment, the amount of the payment and the Budget expense category in which such expense is applies;

(b) On Friday of each week, an occupancy report for one week period ending on the immediately preceding Saturday; and

(c) Promptly following Debtor's receipt of any of the following, any correspondence or other information the Debtor receives or becomes aware of regarding efforts to obtain financing pursuant to the EB5 program including but not limited to a copy of any letter of intent, any modifications or terminations of the letter of intent, any business plan prepared for the potential EB5 investors, any private placement memorandum prepared for presentation to the potential EB5 investors, copies of all signed subscription agreements, evidence of all deposits or escrow amounts paid by any EB5 investors or any other correspondence relating to the foregoing.

10. <u>Term</u>. The Debtor's authority to use Cash Collateral under this Order shall be effective immediately and shall extend to April 28, 2011 ("Termination Date") unless terminated earlier as provided in paragraph 11. To the extent any provision of this Order conflicts with any provision of the Motion, the provisions of this Order shall control.

11. <u>Termination</u>. Immediately upon the occurrence or existence of one of the following Termination Events (as defined below) Prepetition Lender shall be authorized to issue a notice (a "Remedies Notice") (which Remedies Notice may be delivered by electronic mail) thereof to the Debtor, its counsel, counsel to any Unsecured Creditor Committee, if any, and the U.S. Trustee. With respect to subsections (b), (c), and (d) of the definition of "Termination Event," the Debtor's authority to use cash Collateral will terminate immediately upon issuance of a Remedies Notice without further order of the Bankruptcy Court. With respect to subsection (a), (f) and (g) of the definition of Termination Event, unless, within five (5) days after receipt of such notice by the Debtor's counsel, the Court determines that the applicable Termination Event has not occurred or does not exist, the Debtor's authority to use Cash Collateral shall terminate immediately following such five day period without further order of the Bankruptcy Court. With

respect to subsection (e) of the definition of Termination Event, unless, within fifteen (15) days after receipt of such notice by Debtor's counsel, the Court determines that the applicable Termination Event has not occurred or does not exist, the Debtor's authority to use Cash Collateral shall terminate immediately following such fifteen day period without further order of the Bankruptcy Court. The term "Termination Event(s)" shall mean any one or more of the following:

    (a)    the Debtor shall have failed to comply with any provision of this Order and shall have failed to cure such default on or before the fifth day following delivery of notice of such default to the Debtor which notice may be provided by electronic mail;

    (b)    the entry of an order dismissing this case or converting this case to a case under Chapter 7 of Title 11 of the United States Code, unless such order is stayed pending appeal;

    (c)    the entry of an order authorizing the appointment of a trustee or examiner;

    (d)    the date that the order approving this Stipulation is reversed, revoked, stayed, rescinded, modified or amended without the consent of Prepetition Lender;

    (e)    the date that the Debtor files a plan of reorganization with the Bankruptcy Court, other than with the consent of Prepetition Lender;

    (f)    by March 15, 2011 the Debtor or Debtor's principal member has not entered into a letter of intent ("LOI") with respect to an EB5 investment program which provides for at least a $5,000,000 (net of fees owed to any EB5 investors) equity investment to be made to the Debtor; and

    (g)    the LOI is terminated or the investor indicates its intention not to proceed further with the EB5 investment.

12.    <u>Adequate Protection Demand</u>. Prepetition Lender shall be deemed to have made a demand for adequate protection with respect to any and all of the Prepetition Collateral effective as of the January 21, 2011. Prepetition Lender shall be entitled to adequate protection commencing as of January 21, 2011 to the extent that Prepetition Lender establishes that it is otherwise entitled to adequate protection.

13.  <u>Debtor Stipulation and Debtor Challenge</u>. The Debtor stipulates and agrees to the following (paragraphs 11(a) through 11(e) shall be referred to as the "Debtor Initial Stipulations"):

(a) The Prepetition Lender made a loan (the "Loan") to Debtor in accordance with the terms of a Promissory Note (the "Note") in the face amount of Nine Million Dollars ($9,000,000.00) dated November 23, 2005 and in accordance with the provisions of a Term Loan Agreement dated November 23, 2005, by and between Prepetition Lender and Debtor, as modified by that certain First Amendment to Term Loan Agreement dated June, 26 (collectively, the "Loan Agreement");

(b) The Loan is secured by a Mortgage, Security Agreement and Fixture Financing Statement dated the 23rd day of November, 2005 and recorded with the Officer of the Recorder of Deeds, LaSalle County, Illinois (the "Recorder's Office") on the 6th day of December, 2005 as Document No. R2005-32038 (the "Mortgage") against Grizzly Jack's Grand Bear Lodge and Waterpark located at 2643 North IL Route 178, North Utica, IL 61373, as amended by a Loan and Mortgage Modification Agreement dated November 30, 2008 and recorded with the Recorder's Office on February 9, 2009 as Document No. 2009-03173 (the "First Loan Modification"), and as amended by a Loan and Mortgage Second Modification Agreement dated November 30, 2009 and recorded with the Recorder's Office on December 31, 2009 as Document No. 2009-32010 (the "Second Loan Modification"), and is further secured by an Assignment of Rents, Leases, Revenues and Profits of the Project dated the 23rd day of November, 2005 and recorded with the Recorder's Office on the 6th day of December, 2005 as Document No. R2005-32039 (the "Assignment of Revenues"), and is additionally secured by a Collateral Assignment of Account dated June 20, 2006 between Debtor and Prepetition Lender (the "Assignment of Account") and is also secured by a Uniform Commercial Code Financing Statement filed with the office of the Secretary of State, State of Illinois as File Number 010487536, and continued under a Continuation Statement filed October 19, 2010 (collectively the "Financing Statement") (the Note, Loan Agreement, Mortgage, First Loan Modification, Second Loan Modification, Assignment of Revenues, Assignment of Account and Financing Statement are sometimes referred to collectively herein as the "Prepetition Claim Documents").

(c) The Loan is further secured by the execution and delivery of a Guaranty (the "Guaranty") by Grand Bear Investors, LLC, an Illinois limited liability company, Joseph F. Hook, Jr., Keith E. Wolick and Susan Wolick dated as of the 23rd day of November, 2005 (collectively and individually, the "Guarantors").

(d) The Prepetition Claim, including all amounts due under the Prepetition Claim Documents, is secured by valid, perfected, and unavoidable first priority liens, security interests, and mortgages, in substantially all of the real and personal property of the Debtor (the Debtor's assets that are encumbered by such non-

avoidable and perfected liens in favor of Prepetition Lender are hereinafter referred to as the "Prepetition Collateral").

(e) Except for proceeds of avoidance actions, all (i) cash of the Debtor's Bankruptcy estate (the "Estate"), wherever located, and (ii) cash equivalents, whether in the form of negotiable instruments, documents of title, securities, deposit accounts, or in any other form, which represent income, proceeds, products, rents, or profits of the Prepetition Collateral that are now in the possession, custody, or control of the Debtor, or in which the Debtor will obtain an interest during the pendency of this Case, which represent income, proceeds, products, rents, or profits of the Prepetition Collateral (collectively, the "Cash Collateral"), shall constitute the Cash Collateral of the Prepetition Lender.

Unless the Debtor commences an action ("Debtor Challenge") challenging the Claim Stipulation (defined below) on or before 14th day following the date that the Prepetition Lender delivers to the Debtor's counsel a calculation of the amount due, in addition to the Debtor Initial Stipulations, the Debtor shall be deemed to have stipulated to the following (the "Claim Stipulation" collectively with the Debtor Initial Stipulations, the "Debtor Stipulations"): that the Prepetition Lender holds an allowable claim against the Debtor in an aggregate amount equal to at least $8,659,069.41, as of the Petition Date, which amount includes default interest and other charges (the "Prepetition Claim").

14. <u>Challenges</u>. Notwithstanding anything contained herein to the contrary, the extent, validity, priority, perfection and enforceability of the prepetition obligations owed to the Prepetition Lender ("Prepetition Indebtedness"), and any liens, mortgages or security interests in favor of the Prepetition Lender encumbering the Prepetition Collateral ("Prepetition Liens"), and all acknowledgments, admissions, confirmations, and waivers of the Debtor above, are for all purposes subject to the rights of any party in interest, other than a Debtor and the Guarantors, to seek to invalidate, or otherwise challenge (including a determination of the validity, priority, and extent of any lien of) (collectively, "Claims and Defenses") the Prepetition Indebtedness or Prepetition Liens, including by properly filing a complaint pursuant to Bankruptcy Rule 7001 or

by otherwise properly asserting a contested matter (any of these actions, a "Challenge"); provided, however, that, to the extent not previously resolved by confirmation and consummation of any chapter 11 plan of reorganization, any such Challenge must be commenced or asserted in this Court within ninety (90) days after appointment of the committee of unsecured claimholders under section 1102 of the Bankruptcy Code, but in no event later than June 24, 2011. Except to the extent that a Challenge is timely commenced within such time period (or such timely asserted Challenge does not result in a final and non-appealable order of this Court that is inconsistent with clauses (i) through (iv) of this Paragraph), then any and all Claims and Defenses against the Prepetition Lender shall be deemed to have been forever relinquished, released and waived as to such Committee and other person or entity, and if such Challenge is timely asserted on or before such date, any and all Claims and Defenses that are not expressly asserted in such Challenge shall be deemed, immediately and without further action, to have been forever relinquished, released and waived as to such Committee and other person or entity.

Except to the extent that a Challenge is timely commenced within such time period, or such timely asserted Challenge does not result in a final and non-appealable order of this Court that is inconsistent with clauses (i) through (iv) of this paragraph, then, without the requirement or need to file any proof of claim with respect thereto, (i) the Prepetition Indebtedness shall constitute an allowed, secured claim for all purposes in the Borrower's Chapter 11 Case and any subsequent proceedings under the Bankruptcy Code, including, without limitation, any chapter 7 proceedings if the Borrower's Chapter 11 Case is converted to a case under chapter 7 of the Bankruptcy Code (a "Successor Case"), (ii) the Prepetition Liens (as applicable) shall be deemed legal, valid, binding, enforceable, perfected, not subject to subordination or avoidance for all purposes in the Borrower's Chapter 11 Case and any Successor Case, (iii) the waiver of the

Claims and Defenses against the Prepetition Lender shall be binding on all parties in interest in the Borrower's Chapter 11 Case and any Successor Case, and (iv) the Prepetition Indebtedness, the Prepetition Liens (as applicable), the waiver of the Claims and Defenses against the Prepetition Lender, and prior payments on account of or with respect to the Prepetition Indebtedness shall not be subject to any other or further claims, cause of action, objection, contest, setoff, defense or challenge by any party in interest for any reason, including, without limitation, by any successor to or estate representative of any Debtor. Nothing in this Order shall confer standing upon the Committee or any other person or entity to bring, assert, commence, continue, prosecute or litigate any Claims and Defenses against the Prepetition Lender.

15. <u>Survival Following Termination</u>. Notwithstanding the provisions of this Order, the rights, claims, security interest, liens and priorities of the Prepetition Lender with respect to all transactions which occurred prior to the termination of the Debtor's right to use Cash Collateral pursuant to the terms of this Order, shall remain unimpaired and unaffected by any such termination and shall survive any such termination.

16. <u>Rights and Remedies Cumulative</u>. The rights and obligations of the Debtor and the rights and claims of the Prepetition Lender arising under this Order are in addition to, and not in lieu or substitution of, the rights, obligations, claims, security interests, liens and priorities existing as of the Petition Date.

17. <u>No Determination With Respect to Certain Issues</u>. Nothing contained in this Order (including the Budget) or in the Prepetition Lender's consent to the use of the Cash Collateral pursuant to this Order shall constitute a determination or finding by the Court, or an agreement or an acknowledgment by the Prepetition Lender, (a) that the value of the Prepetition Lender's interests in the Prepetition collateral are "adequately protected" within the meaning of

Sections 361 and 363 of the Bankruptcy Code or (b) that any calculation or assertion by the Debtor of the value of the Prepetition Collateral is accurate.

18. <u>Notices Under this Order</u>. Any notice permitted to be delivered by electronic mail pursuant to the terms of this order shall be deemed received by the intended recipient thereof if sent via e-mail to the following addresses:

<u>If to the Debtor:</u>

    swolick@grandbearlodge.com
    construction@grandbearlodge.com

With a copy to:

    wfactor@wfactorlaw.com
    gretchen.silver@usdoj.gov

<u>If to Prepetition Lender:</u>

    PMarzynski@doughertymarkets.com
    GBolin@doughertymarkets.com.

With a copy to:

    smeyer@oppenheimer.com
    rsluss@oppenheimer.com
    rheinrich@h-and-k.com
    gretchen.silver@usdoj.gov

19. <u>Notice</u>. Notice of the Interim hearing on the Cash Collateral Motion has been given to the United States Trustee, the twenty (20) largest creditors of the Debtor and others in interest pursuant to Bankruptcy Rules 2002, 4001(c) and 9006, the Local Rules of this district, and as required by Bankruptcy Code §§ 102, 361 and 363. Other than the notice provided for

herein, no further notice of, or hearing on, the relief sought in the Cash Collateral Motion is necessary or required.

ENTER: 3/10/11

_____
Hon. Carol A Doyle,
United States Bankruptcy Judge

PREPARED AND CONSENTED TO BY:

| GRAND BEAR LODGE, LLC | DOUGHERTY FUNDING, LLC |
|---|---|
| By: /s/ William J. Factor | By: /s/ Rob Heinrich |
| One of Its Attorneys | One of Its Attorneys |

OPPENHEIMER/2863882.03
16628.101

# EXHIBIT A

## Grand Bear Lodge, LLC
## Cash Flow Budget

| | Notes | 25-Feb-11 | 4-Mar-11 | 11-Mar-11 | 18-Mar-11 | 25-Mar-11 | 1-Apr-11 | 8-Apr-11 | 15-Apr-11 | 22-Apr-11 | 29-Apr-11 | Total |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| **Cash Receipts** | | | | | | | | | | | | |
| Room Revenue | | 162,200 | 130,300 | 104,600 | 120,500 | 129,500 | 230,000 | 294,800 | 155,900 | 48,800 | 120,600 | 1,497,200 |
| Banquet Revenue | | - | 2,115 | 2,475 | 915 | 100 | 9,770 | - | - | 750 | 1,930 | 18,055 |
| Food and Beverage | | 16,300 | 13,300 | 10,700 | 12,200 | 13,000 | 23,800 | 29,700 | 15,700 | 4,900 | 12,200 | 151,800 |
| Other | | 17,700 | 49,900 | 12,300 | 13,600 | 45,900 | 25,600 | 35,400 | 23,000 | 38,500 | 7,200 | 269,100 |
| Less: Gift Certificates (1% of total) | | (2,000) | (2,000) | (1,300) | (1,500) | (1,900) | (2,900) | (3,600) | (1,900) | (900) | (1,400) | (19,400) |
| **Total Cash Receipts** | 1 | 194,200 | 193,615 | 128,775 | 145,715 | 186,600 | 286,270 | 356,300 | 192,700 | 92,050 | 140,530 | 1,916,755 |
| **Cash Disbursements** | | | | | | | | | | | | |
| **Cost of Sales** | | | | | | | | | | | | |
| Insurance | | - | 7,650 | 17,000 | 7,500 | - | 7,650 | 17,000 | - | - | - | 56,800 |
| Maint. & Supplies | 2 | 9,260 | 9,260 | 9,260 | 9,260 | 9,260 | 9,260 | 9,260 | 4,630 | 4,630 | 4,630 | 78,710 |
| Food & Beverage Costs | 2 | 4,570 | 4,280 | 3,630 | 3,530 | 3,650 | 9,260 | 8,310 | 4,390 | 1,380 | 3,830 | 46,830 |
| Gift Shop Costs | 2 | 2,010 | 1,620 | 1,300 | 1,490 | 1,600 | 2,850 | 3,650 | 1,930 | 600 | 1,490 | 18,540 |
| Capital Expenditures | 5 | - | - | - | 30,000 | - | - | - | - | - | - | 30,000 |
| Utilities | 2 | 25,600 | 4,600 | 15,800 | 15,500 | - | 25,600 | 4,600 | 15,500 | - | 25,600 | 132,800 |
| Association Dues | 3 | 14,140 | 14,140 | 14,140 | 14,140 | 14,140 | 14,140 | 14,140 | 14,140 | 14,140 | 14,140 | 141,400 |
| Villa & Cabin Owners Reimbursement | 3 | 43,580 | 33,860 | 22,320 | 22,920 | 17,460 | 56,070 | 88,530 | 33,250 | 450 | 20,560 | 339,000 |
| Fees to Enchanted Forest | 3 | 9,800 | 9,700 | 7,400 | 7,500 | 6,400 | 14,200 | 20,800 | 9,600 | 2,900 | 3,500 | 91,800 |
| Sales, Use & Occupancy Taxes | 4 | 2,900 | 13,180 | - | - | 5,200 | 43,600 | - | - | 4,700 | 56,300 | 125,880 |
| Other | 2 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 2,000 | 2,000 | 2,000 | 2,000 | 2,000 | 15,000 |
| **Total Cost of Sales** | | 112,860 | 99,290 | 91,850 | 112,840 | 58,710 | 184,630 | 168,290 | 85,440 | 30,800 | 132,050 | 1,076,760 |
| **Payroll & Benefits** | | | | | | | | | | | | |
| Employee Wages & Taxes | 2 | - | 70,000 | - | 85,000 | - | 92,000 | - | 85,000 | - | 75,000 | 407,000 |
| Employee Benefits | 2 | - | 8,500 | - | - | 8,500 | - | - | - | 8,500 | - | 25,500 |
| **Total Payroll & Benefits** | | - | 78,500 | - | 85,000 | 8,500 | 92,000 | - | 85,000 | 8,500 | 75,000 | 432,500 |
| **Other Disbursements** | | | | | | | | | | | | |
| Professional Fees | 6 | - | - | 20,000 | - | 10,000 | - | - | - | - | - | 30,000 |
| Interest | | - | - | - | 22,000 | - | 22,000 | - | 22,000 | - | 22,000 | 88,000 |
| Real Estate Taxes - Escrow | 7 | - | - | - | 20,000 | 20,000 | 20,000 | 20,000 | 20,000 | 20,000 | - | 120,000 |
| Sales & Marketing Expenses | 2 | 1,000 | 4,800 | 7,900 | 2,500 | 2,500 | 2,500 | 4,800 | 7,900 | 2,500 | 2,500 | 38,900 |
| Other | 8 | 1,430 | 16,430 | 7,210 | 1,410 | 1,410 | 21,410 | 7,210 | 1,410 | 1,410 | 12,210 | 71,540 |
| **Total Other** | | 2,430 | 21,230 | 35,110 | 45,910 | 33,910 | 65,910 | 32,010 | 51,310 | 23,910 | 36,710 | 348,440 |
| **Total Cash Disbursements** | | 115,290 | 199,020 | 126,960 | 243,750 | 101,120 | 342,540 | 200,300 | 221,750 | 63,210 | 243,760 | 1,857,700 |
| **Net Cash Flow** | | 78,910 | (5,405) | 1,815 | (98,035) | 85,480 | (56,270) | 156,000 | (29,050) | 28,840 | (103,230) | 59,055 |
| Beginning Cash | | 100,000 | 178,910 | 173,505 | 175,320 | 77,285 | 162,765 | 106,495 | 262,495 | 233,445 | 262,285 | 100,000 |
| Ending Cash | | 178,910 | 173,505 | 175,320 | 77,285 | 162,765 | 106,495 | 262,495 | 233,445 | 262,285 | 159,055 | 159,055 |

Budget for GBL - 2-23-2011-4785.xls    3/10/2011